IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DAVID M. MCNAIR, | ] | |
| Plaintiff, | ] | |
| v. | ] | CV-03-BE-0053-S |
| OGIHARA AMERICA CORPORATION, | ] | |
| Defendant. | ] | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

This case is before the court on a motion for summary judgment (doc. # 19) filed by defendant Ogihara America Corporation ("Ogihara"). After briefing by both sides, the court held a hearing on June 3, 2004. At that hearing, the parties acknowledged that the case is properly before this court pursuant to its diversity jurisdiction and that the legal issues in this case are governed by Alabama law and not the Employee Retirement Income Security Act of 1974, ("ERISA") as amended, 29 U.S.C. § 1132.

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases when no genuine issues of material fact are presented and when the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56.

The parties' disagreement on each and every fact is not significant; the law requires only that "there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). *See also Celotex v. Catrett,* 477 U.S. 317, 327 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 251-52. Mere speculation is insufficient to create an issue of fact and to defeat a properly-supported motion for summary judgment. *See Ramsey v. Leath*, 706 F.2d 1166, 1169-70 (11th Cir. 1983).

The court has carefully reviewed the motions, the briefs filed in support of and in opposition to the motions, and the supporting and opposing evidentiary materials, and concludes that, for the reasons stated on the record and summarized below, the defendant's motion for summary judgment is due to be GRANTED in its entirety.

## II. FACTUAL BACKGROUND

Plaintiff David M. McNair ("McNair") was hired in February 1996 as an assistant maintenance manager with Ogihara. On February 26, 1996, McNair reviewed, read, and signed a statement of at will employment indicating that his employment could be terminated, either by the company or by himself, at any time for any reason.

In a document entitled "Receipt of Employee Handbook," also signed by plaintiff on February 26, 1996, McNair acknowledged that "neither this handbook nor any other communications by a management representative is intended to, in any way, create a contract of permanent employment."

In early May of 2000, plaintiff began having medical problems such as headaches and depression that his doctor attributed to stress. Consequently, on May 5, 2000, McNair went on medical leave. Pursuant to Ogihara's medical leave policy, employees are granted:

> "A continuous disability leave of absence is for a maximum of six months. Upon written request to the Association Relations Department the leave **may** be extended month by month up to an additional six months. Each request should be accompanied by a doctor's certificate verifying your continued disability."

(emphasis added). According to the policy, the maximum amount of leave time is one-year. However, employees **may** request and the employer **may** provide up to six additional months of medical leave.

On November 14, 2000, plaintiff received a letter from Danny Collins ("Collins"), the Associate Relations Manager at Ogihara, indicating:

> "Dear Dave: This letter is to inform you that your six month **medical leave of absence** expired effective November 4, 2000. Upon written request to the Associate Relations Department the leave **may** be extended month by month for another six months. Each request should be accompanied by a doctor's certificate verifying your continued need to be off work. Please provide your **request** to extend your leave of absence for November and if necessary **December to the Associate Relations Office by 5:00 p.m. Monday, November 27, 2000.** Due to business necessity, we must fill the production maintenance facilitator position that has been vacant while you have been out the past six months. Assuming you qualify for an extended leave of absence, when you are released to return to work, you will be offered an open position that you qualify for here at the Alabama Division."

(emphasis added). McNair admits that he did not send a written request by the November

3

27, 2000 deadline contained in Collins' letter.

However, in response to the letter, McNair testified that he sent Ogihara the following information: (1) a fax dated November 22, 2000 with the enclosure of a medical report from Dr. Carter Harsh; (2) the initial claim report for group long-term disability application form; (3) the attending physician statement required to be submitted in conjunction with the long-term disability application form; and (4) various excuses from his doctor dated November 6, 11, & 22, 2000.[1] Of particular importance, was a November 21, 2000, fax from plaintiff's physician refusing to release the plaintiff from work as a result of his injuries. According to the plaintiff, the above-referenced information was mailed to Ogihara approximately one week before the November 27, 2000 deadline.

On November 27, 2000, plaintiff called Anessa Goodman ("Goodman") in Ogihara's associate relations department to confirm the receipt of the above-referenced paperwork. Goodman indicated that she had not yet received her mail for the day but would send him another form to complete. The next day, November 28, 2000, plaintiff again spoke with Goodman who acknowledged that she had received the requisite form to extend the request for long-term disability benefits and that the information would be forwarded to company's home office.

On December 4, 2000, McNair received a letter from Goodman terminating his employment. The reason given for his termination was that the "[w]ritten request for an

---

[1]Plaintiff's Dep., R. 105-113.

4

extension of medical leave should have been received in our office by November 27, 2000. As of today, December 1, 2000, we have not received that request."

### III. DISCUSSION

#### A. THE SCOPE OF THE EMPLOYER'S AUTHORITY UNDER THE MEDICAL LEAVE POLICY

In its motion for summary judgment, the defendant argues that the plaintiff's claims for negligence, breach of contract, and fraud are precluded by Alabama's employment at will doctrine or in the alternative, by the express terms of Ogihara's medical leave policy giving it the discretionary authority to unilaterally deny an employee's request to extend a medical leave of absence.[2] More succinctly stated, the issue is whether Ogihara's medical leave policy, which gives the employer the discretionary authority to extend an initial period of medical leave for a maximum of six additional months, creates a unilateral contract modifying the employee at will relationship and guaranteeing that the plaintiff would not be denied an extended medical leave unless he failed to timely submit a request for an extension.

According to the defendant, the employment at will doctrine, which governs employment relationships in Alabama, permits it to fire an employee at any time and for any reason. Based on this premise, Ogihara argues that the employment at will doctrine permits an employer to terminate the plaintiff for any reason, even one that is objectively

---

[2] At the June 3, 2004 hearing, plaintiff's counsel conceded that the plaintiff was withdrawing the bad faith claim alleged in count two of his complaint.

5

or subjectively unfair, false, or untrue.

The defendant next argues that, even assuming that Ogihara's medical leave policy created a unilateral contract modifying the employee at will relationship, its medical leave policy nevertheless imbues it with the discretionary authority to deny a request for extended medical leave for any reason. Based on this premise, the defendant contends that any issues relating to McNair's compliance with the prerequisites for extending the medical leave policy or the fairness or the fairness of Ogihara's decision to deny plaintiff an extended medical leave of absence is irrelevant.

In response to the above-referenced argument, McNair contends that, because he timely complied with the requirements for having his medical leave of absence extended after the expiration of the initial six month period, his December 2000 termination was in contravention of the medical leave policy and thus, legally improper.

The court finds the defendant's alternate argument persuasive. Even assuming the non-applicability of the employment at will doctrine,[3] the plaintiff has not presented evidence negating the defendant's authority to exercise its unilateral, discretionary authority to deny an extension of the initial six (6) month period of medical leave. Given the irrefutable evidence of the employer's unilateral authority to deny an employee

---

[3] In Alabama, an employment relationship is ordinarily "at will," and the fundamental principle of employment at will is that the employment relationship is terminable by either party at any time and for any reason. *Hinrichs v. Tranquilaire Hosp.*, 352 So.2d 1130, 1131 (Ala. 1977). Of particular importance given the facts of this case, is the exception to the employee at will doctrine described by the court in *Hoffman-La Roche, Inc. v. Campbell,* 512 So.2d 725, 728 (Ala. 1987), recognizing the possibility that an employee handbook may form a contract that converts an at-will employment relationship into one in which the employer's right to terminate the employment is limited.

6

extended medical leave for any reasons, even an objectively or subjectively bad one, the court concludes that the plaintiff's negligence, breach of contract, and fraud claims challenging Ogihara's denial of an extended period of medical leave are due to be dismissed as a matter of law.

### B. INTERFERENCE WITH BUSINESS RELATIONS CLAIM

Plaintiff's interference with business relations claim is based on what he characterizes as a delay in processing paperwork for long-term disability benefits. In its motion for summary judgment, the defendant contends that plaintiff, as an Ogihara employee, is not a third-party to the contract and thus, his claims must be dismissed as a matter of law.

The elements of a cause of action for intentional interference with business or contractual relations are: (1) the existence of a contract or business relation; (2) the defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; and (4) damage to the plaintiff as a result of the defendant's interference. Justification or competitor's privilege may be presented as a defense. *Soap Co. v. Ecolab, Inc.,* 646 So.2d 1366 (Ala. 1994); *Joe Cooper & Assocs., Inc. v. Central Life Assur. Co.,* 614 So.2d 982 (Ala. 1993); *Century 21 Academy Realty, Inc. v. Breland,* 571 So.2d 296 (Ala. 1990).

At the summary judgment hearing, defense counsel directed the court's attention to portions of the plaintiff's deposition testimony indicating that McNair had received all

disability benefits due to him from CNA.[4] Plaintiff's counsel did not provide the court with any evidence disputing this contention. Accordingly, the court concludes that the defendant's motion for summary judgment on the plaintiff's claim under the interference with business relations claims is due to be granted because of the plaintiff's inability to present sufficient evidence to create a genuine issue of material fact on the interference with business relations claim. Accordingly, the interference with business relations claim is due to be dismissed as a matter of law pursuant to Fed. R. Civ. P. 56.

## IV. CONCLUSION

Based on the foregoing analysis, the court concludes that the defendant's motion for summary judgment (doc. # 19) is due to be GRANTED as to all of the plaintiff's claims.

A separate final order will be entered.

DONE and ORDERED this 22d day of June, 2004.

*[signature]*
KARON O. BOWDRE
UNITED STATES DISTRICT JUDGE

---

[4] Pl's Dep., p. 136-140.